UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM J. SMITH, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. CJC-24-2560 |
| UNITED STATES MARSHALS SERVICE, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This case involves a claim under the Federal Tort Claims Act ("FTCA") filed by Plaintiffs William J. Smith and Marvella Smith (the "Smiths") against the United States Marshals Service (the "Marshals Service"). Before the Court is the Marshals Service's Motion to Dismiss. ECF No. 20. The Marshals Service contends that the Court lacks jurisdiction to entertain the Smiths' FTCA claim because the claim does not satisfy the statutory requirements of the FTCA. ECF No. 20-1 at 4, 9.[1] The issues have been briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed below, the Court grants the Motion.

**BACKGROUND**[2]

On January 4, 2024, officers with the United States Marshals Service Capital Area Regional Fugitive Task Force executed a warrant for the arrest of Plaintiff William Smith at his residence. ECF No. 20-2 at 2; ECF No. 1 at 5. The officers entered Mr. Smith's residence, an

---

[1] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

[2] Plaintiffs are self-represented. Due to the limited facts described in the Complaint, ECF No. 1, the facts recited here are supplemented by facts drawn from the Marshals Service's Motion to Dismiss.

apartment, through two doors. ECF No. 1; ECF No. 20-2 at 3; ECF No. 25 at 1. The first street-level door leads into a common area from which separate apartments can be accessed. ECF No. 20-2 at 3. The second door, Mr. Smith's apartment door, is accessed by ascending a flight of stairs in the common area.  ECF No. 20-2 at 3; *see* ECF No. 25 at 1. Both doors were locked as the officers approached. *See* ECF No. 20-2 at 3; ECF No. 25 at 1. The officers "utilized a halogen tool" to breach the street-level door. ECF No. 20-2 at 3. The officers then reached Mr. Smith's apartment door, knocked on it, and announced that they were officers serving a warrant. ECF No. 20-2 at 3. A male within the apartment asked who was at the door, and the officers again announced the purpose of their visit and commanded several times that the male open the door, but he refused. ECF No. 20-2 at 3. As a result, the officers announced that they would breach Mr. Smith's apartment door and did so. ECF No. 20-2 at 3. The officers entered Mr. Smith's apartment and found and arrested Mr. Smith. ECF No. 20-2 at 3.

On January 12, 2024, Mr. Smith filed an FTCA administrative claim with the Marshals Service. ECF No. 20-3; ECF No. 1-3. In the administrative claim, Mr. Smith sought monetary compensation for the property damage to the two doors caused by the officers arresting Mr. Smith. ECF No. 20-3; ECF No. 1-3. The Marshals Service denied the administrative claim. ECF No. 1-4 at 5.

On September 4, 2024, the Smiths filed their Complaint against the Marshals Service in this Court, asserting the same property damage allegations that were asserted in the administrative claim. ECF No. 1 at 5. On August 13, 2025, the Marshals Service filed the instant Motion. ECF No. 20. The Smiths responded on September 15. ECF No. 25. The Marshals Service did not file a reply.

2

**LEGAL STANDARD**

The Marshals Service moves to dismiss the Smiths' claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A defendant moving to dismiss under this rule can challenge subject-matter jurisdiction either facially or factually. *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024). Under a facial challenge, a court applies the same standard as that applied on a motion to dismiss for failure to state a claim; the court assumes the allegations in the complaint are true and "determines whether those allegations are sufficient to invoke jurisdiction." *Id.* Conversely, a movant asserting a factual challenge contends that "the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In reviewing a factual challenge, a court does not assume the allegations in the complaint are true, and it may consider documents outside the complaint to resolve disputed jurisdictional facts. *See id.* at 192–93. Under either challenge, the plaintiff bears the burden to prove that subject-matter jurisdiction exists. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

Here, the Marshals Service does not specify whether it is asserting a facial or factual challenge, but because it has submitted with its brief several exhibits that the Court considers in assessing the motion, the Court construes the Marshals Service's challenge as a factual one.

The Smiths here proceed *pro se*. Courts liberally construe the pleadings of *pro se* litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even with these liberal pleading standards, however, "a *pro se* plaintiff must still demonstrate the existence of federal subject[-]matter jurisdiction." *Magnas v. Perlman*, Civil Action No. PWG-20-2862, 2021 WL 915352, at *2 (D. Md. Mar. 10, 2021).

## DISCUSSION

Whether the Court has subject-matter jurisdiction depends on if the Smiths' allegations fall within the scope of the FTCA.[3] The FTCA waives the United States' sovereign immunity—and, in turn, confers subject-matter jurisdiction to district courts—for claims alleging property damage "caused by the negligent or wrongful act or omission of any employee of the [United States] Government while acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1); *Evans*, 105 F.4th at 612. "Because the FTCA confers jurisdiction only over claims covered by [it], district courts lack subject-matter jurisdiction over claims against the government that fall outside of the statute's purview." *Evans*, 105 F.4th at 612. Thus, the issue is whether the Smiths' claims are cognizable under the FTCA.

The Marshals Service argues that the Smiths' claim fails to satisfy the requirements of the FTCA for two reasons. First, the Marshals Service argues that the so-called "discretionary function exception" prohibits the Smiths from asserting their FTCA claim. ECF No. 20-1 at 4. Second, the Marshals Service contends that the Smiths' FTCA claim fails because there are no "circumstances where the United States, if a private person, would be liable to the [Smiths]" as

---

[3] The Smiths have incorrectly named the Marshals Service as the defendant for their FTCA claim. "FTCA claims may only be brought against the United States, not its agencies or employees." *Lucas v. Fed. Motor Carrier Safety Admin.*, Civil Action No. EA-24-3004, 2025 WL 1382895, at *5 (D. Md. May 13, 2025) (citation omitted). Nevertheless, in cases in which a *pro se* plaintiff has incorrectly sued an agency or employee under the FTCA, courts have declined to dismiss the plaintiff's claims and have instead substituted the United States for the agency or employee. *Cage v. NASA Goddard Space Flight Ctr.*, Civil action No. PX-18-3355, 2019 WL 3841928, at *4 n.1 (D. Md. Aug. 14, 2019); *Lucas*, 2025 WL 1382895, at *5; *see also* Fed. R. Civ. P. 21 ("[O]n its own, the [C]ourt may at any time, on just terms, add or drop a party."). Here, the Smiths have incorrectly sued the Marshals Service, an agency of the United States, rather than the United States itself. The Marshals Service, however, consents to treating the claim as being against the United States. ECF No. 20-1 at 1 n.1. Thus, "[b]ecause this procedural defect may be remedied by substitution of the United States for the federal agency, standing alone it does not supply a basis for dismissal." *Lucas*, 2025 WL 1382895, at *5.

required by the statute. 28 U.S.C. § 1346(b)(1); ECF No. 20-1 at 9. The Court need not address this latter argument, however, because the Court finds that the discretionary function exception applies to bar the Smiths' claim.

The discretionary function exception bars any FTCA claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of … an employee of the [United States] Government." 28 U.S.C. § 2680(a). Courts employ a two-prong test to determine if the discretionary function exception applies. First, a court must determine if the conduct of the government employee in question involves a discretionary act. *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017) (citing *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, a court must determine whether the conduct involves public policy considerations. *Id.* (citing *Berkovitz*, 486 U.S. at 537). The plaintiff bears the burden of showing the discretionary function exception does not apply. *See id.* at 127. The Court analyzes each prong below before addressing the Smiths' negligence argument.

I.    **The Officers' Conduct in Executing the Warrant Involved Discretion.**

The Marshals Service argues that the officers' conduct involved discretion and that the Smiths have not met their burden to prove otherwise—the first prong of the discretionary function exception test. ECF No. 20-1 at 7. The Court agrees. A government employee's conduct is discretionary if (1) the conduct "involv[es] an element of judgment or choice" and (2) there is no "federal statute, regulation, or policy specifically prescrib[ing] a course of action for an employee to follow." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020) (citations omitted). Below, the Court finds, first, that the enforcement actions taken by the officers involved an element of judgment or choice, and second, that the policies that guide the officers in executing warrants do not specifically prescribe a course of action.

First, the officers' conduct in executing the warrant involved an element of judgment or choice. Most courts have found that arrests involve various choices that are subject to the discretion of the arresting officers. *See Burgess v. Watson*, No. 1:12CV810, 2014 WL 4540256, at *3 (M.D.N.C. Sept. 11, 2014) (collecting cases for the proposition that "[c]ourts have overwhelmingly found that claims of negligent investigation or negligent arrest by law enforcement officers are barred by the discretionary function exception"); *see also Hart v. United States*, 630 F.3d 1085, 1090 (8th Cir. 2011) ("[L]aw enforcement decisions of the kind involved in making or terminating an arrest must be within the discretion and judgment of enforcing officers."). Here, the officers with the Marshals Service decided that they would arrest Mr. Smith on January 4 at his apartment by breaching the apartment building, knocking and announcing their presence once outside Mr. Smith's door, and breaching Mr. Smith's apartment when no one opened the door. ECF No. 20-2 at 2–3. The facts thus show that the date, the location, and the manner in which the officers arrested Mr. Smith involved myriad choices subject to the officers' discretion.

Second, the United States Marshals Service Policy Directives govern the conduct of officers of the Marshals Service, but these directives do not specifically prescribe how the officers were required to arrest Mr. Smith or enter his apartment. *United States Marshals Service Policy Directives: Investigative Operations*, U.S. Marshals Service, https://www.usmarshals.gov/sites/default/files/media/document/usms-policy-directive-arrests.pdf (last updated June 28, 2018) [hereinafter "Policy Directives"]. The Policy Directives describe how an officer may arrest an individual:

> 2. [W]herever possible, an arrest *should* be effected by sufficient law enforcement personnel to insure the safety of all participants[.]

* * *

6

    4. The arresting deputy shall properly identify himself or herself …. However, this procedure is *contingent* upon the circumstances and physical condition of the offender.

* * *

    7. The degree of force used is *based on the totality of the circumstances* confronting the deputy.

*Id.* at 1 (emphasis added). Thus, the Policy Directives describe how many officers should participate in the arrest, whether officers should identify themselves, and how much force should be used in conducting the arrest, among other things. *Id.* Significantly, these directives do not prescribe a specific course of action regarding how to arrest an individual because the language used in the directives is permissive. The directives state that an arrest "should" be made by sufficient personnel, that whether an officer identifies themselves is "contingent," and that the amount of force used in the arrest is "based on the totality of the circumstances"—all of which indicate that officers must use their discretion to determine how to plan and execute an arrest.

    The Policy Directives also describe the way in which officers of the Marshals Service may enter into a private residence to conduct an arrest, but here, too, these directives do not prescribe a specific course of conduct. The directives instruct as follows:

    1. When the investigation develops information that the fugitive is located in a specific private premises, entry into the premises *may* be accomplished in any of the following ways:

        a. With voluntary consent of the person in possession or control of the premises.

* * *

        c. Without an arrest warrant if the deputy has probable cause to make the arrest and "exigent circumstances" exist.

        d. With an arrest warrant, if the residence is that of the fugitive and the deputy has reasonable belief that the subject is inside, forced entry *may* be used.

Policy Directives, *supra*, at 3 (emphasis added). Thus, the Policy Directives permit officers to enter a residence and conduct an arrest in three separate scenarios: with consent, with exigent

7

circumstances, or with an arrest warrant. *Id.* Additionally, if officers have an arrest warrant, they may forcibly enter the residence. *Id.* These directives do not prescribe specific conduct for two reasons. First, the fact that the Policy Directives list three possible scenarios for entering a residence suggests that the directives confer discretionary authority on officers to decide how they might arrest an individual in their residence. Second, use of the word "may" also indicates officers have discretion. *See Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) ("[I]t is uncontroversial that the term … 'may' typically indicates authorization without obligation."). The Policy Directives use "may" twice here: first when outlining the three scenarios in which officers can enter a dwelling, and second when describing when officers can use force to enter a dwelling. This permissive language indicates that officers not only have discretion to choose one of three scenarios in which they may enter a residence, but also that, if they attempt to arrest an individual using an arrest warrant, they may choose whether to use force in doing so. Such decision-making establishes that the Policy Directives regarding entering a residence do not mandate a specific course of action.

      The arrest of Mr. Smith involved elements of judgment, and there was no federal law or policy specifically prescribing the way in which the officers were required to arrest Mr. Smith. As a result, the Smiths have failed to meet their burden to prove that the officers' conduct was not discretionary.

## II. The Officers' Conduct in Executing the Warrant Involved Public Policy Considerations.

The Smiths cannot prove that the conduct of the officers of the Marshals Service did not involve public policy considerations. In determining whether a government employee's conduct is based on policy considerations, courts analyze whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Blanco Ayala*, 982 F.3d at 215 (citation omitted). Because this analysis is objective, courts do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Id.* at 214–15 (citation omitted). Additionally, when, as here, "agency guidelines grant discretion to a government agent, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Id.* at 214 (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)). Thus, the question is whether the Smiths can overcome the presumption that the officers' conduct was grounded in policy when they arrested Mr. Smith in accordance with the Policy Directives.

The Court finds that there were a host of public policy considerations in the officers' decision to arrest Mr. Smith. Courts have determined that a federal officer executing an arrest considers public policy choices such as the means by which the officer may execute the arrest and the allocation of the officer's limited resources. *See Blanco Ayala*, 982 F.3d at 217–18 (holding that, in conducting arrests, Department of Homeland Security officers consider how they allocate limited agency resources such as "time, legal resources, and detention capacity"); *Williams v. United States*, 314 F. App'x 253, 255, 258 (11th Cir. 2009) (holding FBI officer's decision to hit fleeing arrestee with car was grounded in considerations of "the need to restrain [the arrestee], the concern for [the arrestee's] safety, the public's safety, [the officer's] available resources, and the information at hand"). Here, the officers with the Marshals Service were

tasked with considering, among other things, their available resources, the number of officers necessary to arrest Mr. Smith, the location at which they would arrest him, the means by which they would access his apartment, and the safety of Mr. Smith, the officers, and the public. These considerations establish that the officers' conduct in arresting Mr. Smith "involved the kind of policy judgment that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 332. Thus, the Smiths have not met their burden to overcome the presumption that the officers' arrest of Mr. Smith was grounded in public policy considerations.

**III.     The Officers' Alleged Negligence in Arresting Mr. Smith is Immaterial.**

The Smiths fail to address the discretionary function exception and instead argue that the officers negligently arrested Mr. Smith by failing to contact him prior to the execution of the warrant and by failing to adequately announce their presence. ECF No. 25 at 1. The Smiths' argument is misplaced, however. The FTCA states that the discretionary function exception applies even if the government is negligent. *Blanco Ayala*, 982 F.3d at 216; 28 U.S.C. § 2680(a) (applying exception "whether or not the discretion involved be abused"). The Court thus rejects the Smiths' argument because the decisions made by the officers "need not [have been] correct in order to be exempted from the FTCA's waiver of sovereign immunity under the discretionary function exception." *Blanco Ayala*, 982 F.3d at 216.

The first and second prongs of the discretionary function exception test are satisfied, and the Smiths have not met their burden to prove otherwise. As a result, the discretionary function exception applies to bar the Smiths' FTCA claim, and the Court lacks subject-matter jurisdiction to consider it. The Court dismisses the Smiths' claim.

## CONCLUSION

The Court GRANTS the Motion to Dismiss. A separate order consistent with this opinion follows.

Date: January 16, 2026

                                                /s/
                                      Chelsea J. Crawford
                                      United States Magistrate Judge